# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | |
|---|---|
| JEREMIAH WARNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CAUSE NO. 1:12CV447-PPS |
| v. | ) |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Jeremiah Warner appeals the Social Security Administration's decision to deny his application for disability insurance benefits. An administrative law judge denied Warner's request for benefits and found that Warner was not disabled within the meaning of the Social Security Act. Warner raises a number of challenges to the ALJ's determination, but for the reasons below, I conclude that the ALJ's decision was supported by substantial evidence. Therefore, I affirm the decision of the ALJ.

## BACKGROUND

Those looking for a detailed discussion of Warner's medical records are directed to the extensive summaries in the ALJ's decision [DE 6 at 32-36] and in Taylor's opening brief [DE 9 at 2-9]. Rather than simply reiterating those summaries, I will give a brief overview of Warner's history of health issues.

Warner, who was born on October 7, 1974 and used to work as a welder and driver, applied for disability benefits on June 1, 2011, alleging an onset date of August 4, 2008. His chief complaint was that he had major pain in his right hand and wrist, the result of a work-related truck accident. The claim was denied initially on August 1, 2011, and then again upon

reconsideration on October 17, 2011.  Subsequently, Warner filed a written request for a hearing, which was held on May 1, 2012.  Warner testified at the hearing, as did vocational expert Sharon Ringenberg.

At the hearing before the ALJ, Warner testified to having constant pain in his right hand that has worsened with every surgery he has had since the incident that caused the initial injury.  He testified that he is now only able to bend his hand approximately 30 degrees.  Warner also testified that the pain in his hand causes him difficulty with brushing his teeth, dressing, taking a shower, and working on a computer.  The pain also prevents him from doing any chores at home.  Warner further testified that the medicine that he takes to treat his pain and depression causes him to become tired, and accordingly, his typical daily activities alternate between taking naps and watching television.  Warner is able to drive himself and operate a car.

The ALJ issued a decision denying benefits [DE 6 at 26].  At Step One, the ALJ found that Warner met the insured status requirements of the Social Security Act, and that he has not engaged in substantial gainful activity since August 4, 2008, the alleged onset date.  At Step Two, the ALJ concluded that Warner had the following severe impairments: obesity, regional complex pain syndrome, hypertension, and depression.  At Step Three, the ALJ concluded that Warner does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments.  At Step Four, the ALJ found that Warner could perform light work with the following qualifications: he is limited to lifting 20 pounds occasionally and 10 pounds frequently; standing or walking about six hours in an eight-hour day; sitting for about six hours in an eight-hour day; never climbing ladders, ropes, or scaffolds; occasionally crawling; frequently climbing ramps or stairs, balancing, stooping, kneeling and crouching; can

occasionally handle and finger objects with his right dominant hand; and is limited to simple tasks and superficial interaction with co-workers and supervisors. At Step Five, the ALJ found that although Warner could not perform any past relevant work, there were a significant number of jobs in the national economy that he could perform. So his claim for disability was denied.

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Warner timely sought review of that decision by filing this case.

## **DISCUSSION**

My review of an ALJ's decision to deny social security benefits is limited to determining whether the decision is supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). "Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion." *Id.* The question before me is not whether or not Warner is disabled, but whether there is substantial evidence in the record supporting the ALJ's decision finding him not disabled. *Books v. Chater*, 91 F.3d 972, 977 (7th Cir. 1996). In other words, the ALJ's decision, if supported by substantial evidence and reached under the correct legal standard, will be upheld even if reasonable minds could differ as to the appropriate conclusion. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). A reviewing court should not re-weigh evidence, choose among conflicting versions of events, decide questions of credibility, or substitute its own judgment for the ALJ's. *Young*, 362 F.3d at 1001.

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant is deemed to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

3

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

Warner contends that the ALJ erred in three ways: (1) by improperly rejecting the opinions of Warner's treating physicians, Drs. Fortin and Armstrong; (2) at Step Three, by failing to consider that Warner met or medically equaled the requirements of Listing 1.07; and (3) at Step Three, by improperly weighing the evidence and finding Warner's subjective complaints of pain lacked credibility, and failing to mention SSR 03-02p in her decision. I'll address each of these arguments in turn.

1. **Treating Physician Opinions**

Warner argues that the ALJ's decision to give little weight to Drs. Fortin and Armstrong's opinions violated SSR 96-2p – which governs the weight to be given to treating medical sources – because it wasn't specific or supported by the evidence in the record. In particular, he points to the fact that the ALJ's decision only mentioned two or three of his many office visits with Dr. Fortin; that she failed to list each of his surgeries and the medications he was prescribed; and that Dr. Fortin was a "pain specialist."

First, the ALJ did not have to list all of Warner's surgeries or medications, nor, as Warner concedes, is she required to "discuss every single treatment note by Dr. Fortin" [DE 9 at 13]. She only needs to "minimally articulate" her reasons for discounting the treating physician's opinion after considering the extent to which the opinion is supported by medical findings and is

4

consistent with substantial evidence in the record. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *see also Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (". . . an ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability . . . the ALJ need not provide a written evaluation of every piece of evidence") (internal citation and quotation omitted). Warner contends that the ALJ's discussion of Dr. Fortin's notes was akin to the ALJ's failure to cite a treating physician's treatment notes in *Duncan v. Apfel*, 248 F.3d 1157 (7th Cir. 2000) [DE 9 at 13]. But in *Duncan*, the ALJ did not cite to the treatment notes *at all*, whereas in this case, the ALJ specifically referenced Dr. Fortin's medical records [DE 6 at 34]. In fact, the very records referenced by the ALJ – Exhibit 22F of the record – list the medications that Dr. Fortin prescribed Warner that he now claims the ALJ failed to consider – Opana, Nucynta, and Lyrica [DE 9 at 13; DE 6 at 34, 761]. Contrary to Warner's claims, the ALJ's treatment of Dr. Fortin's notes – referencing them, without listing their contents exactly – is clearly not tantamount to a "failure to mention an entire line of evidence." *Duncan*, 248 F.3d 1157.

Here, the ALJ assessed Dr. Fortin's opinions and assigned little weight to those opinions for two clearly articulated reasons: first, because Dr. Fortin's repeated conclusory statements that Warner was not able to perform gainful employment was "an issue reserved to the Commissioner" [DE 6 at 34]; and second, because Dr. Fortin's opinion was "inconsistent with the medical record as a whole and failed to give specific limitations other than that the impairments impair [Warner's] sustained concentration." [*Id.*].

The ALJ was correct to reject Dr. Fortin's conclusion that Warner was "disabled" because that decision "is an issue reserved to the Commissioner and he is not entitled to disability

benefits simply because [his] physician states that [he] is disabled" or "unable to work." *Gildon v. Astrue*, 260 Fed. App'x 927, 929 (7th Cir. 2008) (citations and quotations omitted). In fact, opinions by a physician, treating or otherwise, that a claimant is "unable to work" are not considered medical opinions at all, and "are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case." 20 C.F.R. § 404.1527(d)(1-2).

What's more, a treating physician's opinion receives controlling weight only if it is well supported by "medical findings and not inconsistent with other substantial evidence in the record." *Clifford v. Apfel*, 227 F.3d. 863, 870 (7th Cir. 2000). It is for this reason that "[a]n ALJ is not required to accept a doctor's opinion if it is brief, conclusory, and inadequately supported by clinical findings." *Gildon*, 260 Fed. App'x at 929.

Here, the ALJ afforded Dr. Fortin's opinion little weight because it was inconsistent with the entire record. First, Dr. Fortin's opinion conflicted in some ways with the opinion of Dr. Vendor, who also treated Warner on an ongoing basis. Dr. Vendor is a hand surgeon who did several procedures on Warner's wrist. As the ALJ pointed out, Dr. Vendor concluded on January 18, 2012 that Warner had "reached maximum medical improvement" and that his only work restrictions were that Warner was limited to "lifting/pushing/pulling – 40 pounds." [DE 6 at 35, 759]. The ALJ chose to give substantial weight to the opinion of Dr. Vendor and less weight to Dr. Fortin because it was more consistent with the medical evidence as a whole. [DE 6 at 35]. It was entirely reasonable for the ALJ to rely on the opinion of Dr. Vendor, a hand and wrist surgeon who personally treated Warner.

There were other reasons to discount the opinions of Dr. Fortin. At the hearing, Warner testified that he could grab a soda can using his right hand. [DE at 57]. There was also evidence that Warner was able to drive himself to the bank on a weekly basis, to his doctor's appointments, and to the disability hearing. [DE 6 at 35, 51-52]. Even Dr. Fortin himself noted that he witnessed Warner complete a pain questionnaire using his right hand with little difficulty. [DE 6 at 587]. As pointed out by the ALJ, all of this evidence was more consistent with the opinion of Dr. Onausi, the consulting physical examiner. Dr. Onamusi opined that Warner could grip and grasp with both hands, although on a lesser basis with his right hand; reach forward, push or pull with the upper extremities; and use his hand for fine coordination and manipulative tasks like tying knots, doing buttons and shoelaces, holding pens, turning door handles, pulling zippers, and doing fine fingering movements. [DE 6 at 564-65]. The ALJ chose to assign great weight to the opinion of Dr. Onamusi because it was consistent with the entire record. Conversely, it was appropriate for the ALJ to assign little weight to Dr. Fortin's opinions, for "a treating physician's opinion is entitled to controlling weight only if it is not inconsistent with other substantial evidence in the record." *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir. 2002).

Warner also contends that the ALJ erred in her treatment of Dr. Armstrong's opinion, because it failed to consider Dr. Armstrong's conclusions that Warner's pain was "life-altering" and that it was "very difficult" for Warner to use his right hand, and mentioned only that Dr. Armstrong stated that Warner could not operate a vehicle or heavy machinery [DE 9 at 15].

As an initial matter, the ALJ did give "some weight" to Dr. Armstrong's opinion: the RFC that the ALJ eventually crafted came with a restriction to conduct simple tasks, and did not

7

require Warner to operate heavy machinery [DE 6 at 30]. But Warner's objection that the ALJ failed to specifically mention in her opinion that Warner's pain was "life-altering" and made things "very difficult" for him are non-starters: the ALJ cited the very reports in which Dr. Armstrong made these pronouncements in her opinion [DE 6 at 35, citing Exhibits 23F, 26F at 1, which are located at DE 6 at 726, 755]. These statements, however, were in conjunction with Dr. Armstrong's conclusion that Warner's limited hand function "will not allow regular employment" [DE 6 at 726, 755]. Again, as discussed above, a treating physician's opinion regarding a claimant's inability to work is a matter reserved to the Commissioner, not a medical opinion. *Clifford*, 227 F.3d at 870.

I find that the ALJ did not err when she discounted the opinions of Drs. Fortin and Armstrong. It is clear that the ALJ considered the entire record when determining the weight to assign to each physician's opinion (specifically referencing the exact records that Warner now claims she failed to consider), and has at least minimally articulated her reasons for doing so.

    **2.     Listing 1.07**

Warner's next argument is that the ALJ should have considered Listing 1.07. Listing 1.07 requires fracture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset. 20 C.F.R. Part 404, Subpt. P, App. 1 § 1.07.

There is no evidence in the record that Warner's injury was the result of a fracture or break. In fact, Warner admits that there is no evidence of nonunion [DE 9 at 16]. Warner's additional argument citing the multiple surgeries on his wrist also doesn't warrant a finding that

8

his injury met or medically equaled Listing 1.07, because having multiple surgeries doesn't mean that he had a break or fracture, as required by the listing. Consequently, the ALJ could not have found that Warner's symptoms met or medically equaled Listing 1.07. Where, as here, the medical evidence does not indicate that a particular listing could be applicable, the ALJ's failure to refer to a specific listing is not grounds for remand. *Knox v. Astrue*, 327 Fed. Appx. 652, 655 (7th Cir. 2009). I find no error here.

### 3. Credibility Determination

Credibility is largely a factual determination, and because the ALJ is in the best position to observe witnesses, I will not upset credibility determinations on appeal so long as some support in the record is found and the decision is not patently wrong. *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003). Here, Warner argues that what he perceives as the ALJ's shortcomings in discussing Dr. Fortin's treatment notes mean that the ALJ overlooked "key evidence (especially in relation to pain)" and thus, there is no "logical bridge" between the record and the ALJ's credibility determination [DE 9 at 17]. But for the same reasons addressed above, the ALJ's failure to painstakingly comb through each and every one of Dr. Fortin's treatment notes does not require reversal – to the contrary, the ALJ's decision makes clear that she considered the very evidence that Warner argues she overlooked.

In making a credibility determination, the ALJ must look to the absence of an objective medical basis which supports the degree of severity of subjective complaints; the claimant's daily activity; the duration, frequency, and intensity of pain; the precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions. *Sheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004), citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th

9

Cir. 1984). "[A]lthough an ALJ may not simply disregard a claimant's subjective complaints of pain, he may view discrepancies with the medical record as probative of exaggeration." *Knox v. Astrue*, 327 Fed. App'x. 652, 655 (7th Cir. 2009). Here, the ALJ considered each of these factors and crafted a careful opinion listing the inconsistencies between Warner's statements regarding the severity of his pain and its effects as compared to the medical evidence in the record [DE 6 at 36].

Warner claimed that he could hardly use his right hand; that he could not brush his teeth; that he could not use a computer for longer than a minute; shower; or get dressed because of the pain in his right hand and had to learn to complete these tasks using his left hand [DE 6 at 49]. However, the ALJ identified evidence in the records that Warner was able to grip and grasp with both hands, although on a lesser basis with his right hand; reach forward, push or pull with the upper extremities; and use his hand for fine coordination and manipulative tasks like tying knots, doing buttons and shoelaces, holding pens, turning door handles, pulling zippers, and doing fine fingering movements [DE 6 at 36, 564-65]. The ALJ noted that "[a]lthough the claimant has received various forms of treatment for the allegedly disabling symptoms . . . the record also reveals that the treatment has been generally successful," and that "the record indicates generally that those side effects" of Warner's medication are "mild" [DE 6 at 36]. Warner's doctor indicated that he could not operate machinery or drive a car; but Warner testified that he drives once or twice a week [DE 6 at 51]. The ALJ also pointed to the opinion of Dr. Vendor, the surgeon who operated on Warner, who "opined that the claimant had reached his maximum medical improvement and he was released to return to work restrictions limiting him to lifting/pushing/pulling not more than 40 pounds." [DE 6 at 36] All of this is objective medical

evidence that contradicts the degree of severity with which Warner described his pain levels and the extent of his limitations, and are the type of "discrepancies" that are "probative of exaggeration." *Knox*, 327 Fed. Appx. at 655.

Warner asserts that he was not exaggerating the effects of his pain, and that the ALJ improperly evaluated his credibility because she failed to give adequate consideration to Social Security Ruling 03-02p, the ruling that explicitly addresses regional complex pain syndrome, or RSD [DE 9 at 18]. Specifically, Warner argues that the ruling states that "it is characteristic of this syndrome (RSD) that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual" [*Id.*]. Thus, according to Warner, the ruling explains exactly *why*, as the ALJ noted, Warner's "description of the pain has been so extreme as to appear implausible" [DE 6 at 36].

As an initial matter, I note that the ALJ did in fact find that Warner had the severe impairment of regional complex pain disorder [DE 6 at 28], and she also found that none of Warner's impairments, though severe, individually or combined met or medically equaled a listing [DE 6 at 28]. Warner is not challenging those findings. Instead, he argues that the ALJ did not explicitly refer to SSR 03-02p in evaluating Warner's credibility regarding his pain. Had the ALJ simply looked at Warner's severe impairments – obesity, regional complex pain syndrome, hypertension, and depression – and ruled that such impairments were incapable of causing Warner's complaints of such severe pain and thus found Warner to be incredible, Warner's argument might have some merit. In that case, the ALJ wouldn't have appropriately considered the evidence and SSR 03-02p. But that is not what happened here. The ALJ looked at all of the evidence in the record concerning Warner's complaints of pain vis á vis his medical

11

records, his testimony, the opinions of his treating and consulting physicians, and Warner's own actions, and made a reasoned determination that Warner's description of the debilitating effects of his pain were not supported by the record and were, therefore, implausible. The ALJ did not say that Warner's complaints of pain were simply out of proportion with his *injury*; rather, the ALJ opined that Warner's description of his limitations, due to his pain, was implausible. Those conclusions are supported by substantial evidence, as discussed above.

Thus, the record provides adequate support for the ALJ's credibility finding such that Warner cannot demonstrate "that the ALJ's credibility finding is patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 214 (7th Cir. 2003). *See also Kittleson v. Astrue*, 363 Fed. App'x. 553, 557 (7th Cir. 2010); *Scheck*, 357 F.3d at 703 ("The credibility determinations of an ALJ are entitled to special deference and we see no reason to overturn her findings").

## CONCLUSION

The ALJ provided legitimate reasons for her opinion. Even if reasonable minds could differ, the only issue is whether the conclusion reached by the ALJ was supported by substantial evidence, and it was. Accordingly, the decision of the ALJ is **AFFIRMED**.

**SO ORDERED.**

**ENTERED:** March 17, 2014           s/Philip Simon
                                                           Philip P. Simon
                                                           Chief Judge
                                                           United States District Court